OPINION OF THE COURT
Edward H. Lehner, J.
The principal issue on this motion is whether the statutory mandate of Public Health Law § 230 (10) (k), directing' "specific approval” by committees of the respondent Board for the issuance of subpoenas, requires the court to quash a subpoena duces tecum issued by the executive secretary of the Board calling for the production of documents relating to events occurring subsequent to the authorization, when there is nothing in the papers indicating the material the committee sought from petitioner. The court holds that such subpoena is unauthorized and therefore grants petitioner’s motion to quash and denies respondent’s cross motion for an order pursuant to CPLR 2308 (b) seeking compliance.
THE STATUTORY FRAMEWORK
The respondent was created by the Legislature in 1975 (Public Health Law § 230) to investigate professional misconduct on the part of physicians. The term "professional misconduct” is broadly defined in Education Law § 6509, and includes incompetence. From members of the Board, committees of *473 four physicians and one lay person are appointed to investigate and hold hearings on alleged misconduct. (Public Health Law § 230 [6].)
Public Health Law § 230 (10) (k) provides as follows with respect to the issuance of subpoenas: "The executive secretary of the board with the specific approval of a committee on professional conduct of the board shall have the power to issue subpoenas requiring persons to appear before the board and be examined with reference to a matter within the scope of the inquiry or the investigation being conducted by the board and produce books, papers, records or documents pertaining thereto.”
FACTS
Here the committee appointed by the Board to investigate petitioner met on December 20, 1984 and authorized the issuance of a subpoena based on certain complaints received by the Board. However, no action occurred as a consequence of such authorization until October 31, 1985 when the executive secretary of respondent, by counsel, issued a subpoena to petitioner requiring the production by 3:00 p.m. the next day of voluminous records.
Part of the information sought was records of 18 patients, some of whom had not been seen by petitioner until after the authorization of the subpoena. Also, daily surgical logs for the period February 2, 1985 through October 31, 1985, and names and addresses and dates of employment of all persons who assisted in the administration of anesthesia during such period were demanded.
THE CONTENTIONS OF THE PARTIES
Among other arguments, petitioner contends that the request for the foregoing material "renders the subpoena stale and unenforceable especially in the absence of any explanation justifying the delay”.
In its answering papers, respondent fails to offer any explanation for the delay of over 10 months in the issuance of the subpoena. In his memorandum of law the Attorney-General states: "However, a review of the confidential material discloses that the materials sought beyond the date of the authorization are similar to those approved by the Panel. It is the opinion of the Board that it need not reconvene a review panel when additional matters come to its attention which do *474 not differ from those which the panel has already considered. The Board considers the additional materials to be authorized by the prior review of similar material by the December 20, 1984 panel.”
DISCUSSION
The problem with respondent’s position is that the section of law quoted above requires the "specific approval” of a committee of the Board for the issuance of subpoenas. The court finds that the inclusion of the word "specific”, to have any significance, must mean that the material to be demanded in the subpoena must have been considered by the committee, approved by it, and tailored to the particular situation at hand.
In Matter of Levin v Murawski (59 NY2d 35, 47 [1983]), the dissenting Judges, in arguing against the good-faith prerequisite finding necessary for the issuance of subpoenas mandated by the majority, pointed out that "the legislative scheme adds additional protection to the subject of the subpoena” in that "the committee must approve all subpoenas before they are issued by the executive secretary”, a check "not provided in the legislation creating many administrative agencies”. There is nothing in the majority opinion that would in any way disagree with such statement.
Obviously the committee did not approve the specific subpoena issued herein as many of the requested items relate to matters occurring after the authorization. The court finds nothing in the papers that shows, as contended by the Board’s counsel, that the committee intended documents relating to subsequent events to be encompassed within its authorization. Although the court is not ruling that a committee must approve a specific draft of the subpoena, it has an obligation to provide specific guidelines to the Board’s executive secretary as to the documents to be produced. For the protection of the potential accused, the Legislature has mandated specific approval. Such procedure does not leave to the discretion of the Board’s staff the determination of the documents to be required. The committee is to decide that. No committee having approved the specific material requested here, the motion to quash is granted, and the cross motion to enforce is denied.
*475 As a consequence of the foregoing, the court has not ruled on other objections raised by petitioner. For a decision upholding the use of in camera affidavits to satisfy the good-faith requirement specified in Matter of Levin v Murawski (supra) see Bazin v Guest (NY County, index No. 26626/85), decided by the undersigned on even date herewith. Said decision relies on the recent ruling of our Appellate Division in Matter of Levin v Guest (112 AD2d 830 [1985]), upholding the use of in camera affidavits in this type of proceeding.
THE BOARD’S DELAYS
Parenthetically, the court notes that it has again observed the failure of the respondent Board to expedite its proceedings. Here there was an unexplained delay of over 10 months in the issuance of a simple subpoena to a physician, who a committee of the Board has determined warrants investigation. Moreover, the complaint letter serving as the initial impetus for the investigation, which provided the basis for the subpoena, was received in December 1981 and assigned a case number by respondent shortly thereafter. Coupled with the delay in its issuance, the actions of the Board hardly bespeak of a rush to judgment.
In Ackerman v State Bd. of Professional Med. Conduct (NYLJ, Feb. 3, 1986, p 7, col 1 [Sup Ct, NY County]), the undersigned had occasion to comment on an administrative proceeding conducted by a committee of the respondent involving serious charges against a physician which had dragged on for over six and a half years with still no determination, and two more administrative appeals available to the physician if the charges are sustained.
In Matter of Levin v Murawski (supra, p 48), the minority referred to the "traditional principles, also codified in the statute, which favor quick and confidential investigations of complaints against professionals * * * followed by prompt exoneration of the blameless and aggressive action to protect the public from those suspected of being professionally incompetent, mentally ill or dishonest.” The court can only wonder from these two opportunities to observe the Board’s activities whether it is fulfilling the goals envisioned by the Legislature.